## McKILLOP v. FETZER.*

PATENTS; INTERFERENCE; EVIDENCE; MASTER AND SERVANT.

1. Where the evidence in an interference proceeding, involving an improve-
ment in grain drills, showed that the junior party, who was the agent
of a company manufacturing pressed steel articles, took from the senior
party, who was the agent of a company manufacturing agricultural
machinery, and who had expert knowledge of grain drills and knew
what improvements in them were desirable, an order to make a sample
drill; and such sample and several others were made by the former
company for the latter company, until one was produced involving the
invention of the issue; and the senior party testified that he imparted
to the junior party not only the broad idea embraced in the invention,
but suggested to him the various modifications and changes constitut-
ing the invention; while the junior party testified that the other party
did nothing more than furnish him a sample of the old drill and re-
quested him to duplicate it in other material, and that such modifica-
tions and changes were his own; and the evidence further showed that
the junior party filed his application fifteen months after the issu-
ance of the patent to the senior party and about eleven months after
actual knowledge by him of such issuance,—it was *held* that the
senior party was entitled to an award of priority.

2. When one conceives the principle or plan of an invention, and employs
another to perfect the details and realize his conception, though
the latter may make valuable improvements therein, such improved
results belong to the employer. (Following *Kreag* v. *Geen,* 28 App.
D. C. 437.)

No. 490. Patent Appeals. Submitted May 13, 1908. Decided June 9,
1908.

*Patents—Master and Servant.*—The question of the rights of employers
and employees in respect to patents is considered in a note to *Barber* v.
*National Carbon Co.* 5 L.R.A.(N.S.) 1177.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding.     *Affirmed.*

The facts are stated in the opinion.

*Mr. Charles F. Burton* for the appellant.

*Mr. E. E. Wood* and *Mr. L. S. Bacon* for the appellee.

Mr. Justice ROBB delivered the opinion of the Court:

This is an interference proceeding, and involves an alleged improvement for grain drills. The issue is stated in fifteen counts, but we think the following amply sufficient for the purposes of this opinion:

"1. A foot for hopper ends formed of sheet-metal struck up to provide oppositely-disposed overlying flanges, and a reinforcing-filling intermediate said flanges."

"3. A hopper of the character described, formed partially of wood and partially of sheet-metal, the sheet-metal part having struck-up portions forming receiving portions for securing and bracing the wooden parts in place."

"8. A single-piece sheet-metal hopper end having an integral struck-up perforated ear flanged exteriorly."

"13. A single-piece sheet-metal hopper end having integral struck-up side and top flanges, and a struck-up exteriorly flanged perforated ear intermediate said top and one of the side flanges, the flange of said ear merging into said top and side flanges."

William Fetzer, the senior party, filed an application October 22, 1904, which ripened into a patent on January 31, 1905. Samuel W. McKillop, the junior party, filed his application April 30, 1906, which was a year and three months after the issuance of a patent to Fetzer, and about eleven months after actual knowledge of such issuance.

Prior to and during the year 1904, Fetzer was secretary and general manager of the McSherry Manufacturing Company,

manufacturers of agricultural machinery, including grain drills. These drills as then manufactured contained cast-iron ends, which had given the company some trouble in shipment, owing to their liability to breakage. Fetzer and the company's. draftsman, one Moehring, saw a pressed steel hopper in Kansas. City in 1901, at which time Fetzer suggested the idea of manufacturing the ends of their grain drills of pressed steel. Early in 1904 McKillop, who was prominently connected with the Comstock Sash Lock & Novelty Company, manufacturers of pressed-steel articles, wrote the McSherry Manufacturing Company, soliciting orders. This resulted in April, of the same year, in a visit by McKillop to the office of the McSherry Manufacturing Company, where he had an interview with Fetzer, who represented his company. It is clearly established that Fetzer then suggested to McKillop the idea of manufacturing drill ends out of pressed steel, and that McKillop pronounced the idea feasible. The testimony as to just what was. said during the interview is neither clear nor convincing. Certain it is, however, that McKillop was shown a cast-iron drill, and requested to get out a duplicate sample in pressed steel. It is also certain that as the result of this interview such a sample was made, and late in July shipped to Fetzer's company. The first sample was not satisfactory in detail, and several others followed before perfection was attained. In the meantime McKillop again visited Fetzer, and the subject was. again under discussion. The testimony, however, as to what. was said at the second interview, is as indefinite as the testimony concerning the first interview. The correspondence between Fetzer and McKillop during this period has been introduced, but it throws little light on the subject, other than to establish Fetzer's evident desire to hasten the construction and perfection of the drill end sample and certain other parts which McKillop was to make in pressed steel.

It is contended on the part of Fetzer that he imparted to McKillop not only the broad idea embraced in the invention, but suggested to him the various modifications and changes incident to the change in material.

McKillop, on the other hand, contends that Fetzer did nothing more than furnish him a sample of the old construction and request him to duplicate it in pressed steel, and that the modifications and changes which were made, and which really constitute the patentable features of the issue, were the product of his own mind.

It will thus be seen that the question presented is one of originality, rather than of priority of invention. Each of the three tribunals of the Patent Office has ruled that Fetzer was the originator of the invention, and, whilst the question is not free from doubt, we are inclined to concur. We are impelled to this conclusion because of the relation of the parties, which imposes a heavy burden upon McKillop; because of McKillop's long delay in filing his application after he had actual knowledge of the issuance of Fetzer's patent; and because Fetzer possessed expert knowledge of grain drills, and was in a position to know what changes would be necessary. The decision in *Kreag* v. *Geen,* 28 App. D. C. 437, is apposite here. In that case the court, by Mr. Chief Justice Shepard, said: "The relation of employer and employee once established, the law is well settled that when one conceives the principle or plan of an invention, and employs another to perfect the details and realize his conception, though the latter may make valuable improvements therein, such improved result belongs to the employer. * * * As before declared, it is not within our province, under the limitation of the jurisdiction conferred upon us in such cases as this, to say that the improvement was the result of mere mechanical skill, rather than of invention."

In the present case the relation of employer and employee is established. McKillop has failed to explain his long delay in asserting his claims, and has likewise failed to overcome the burden that was upon him.

The decision of the Commissioner is affirmed. The clerk of the court will certify this opinion and the proceedings in this court to the Commissioner of Patents, in accordance with law.

*Affirmed.*